UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY PHILLIPS, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 11-10171-JLT |
| | * |
| CITY OF METHUEN, JOSEPH SOLOMON, | * |
| RANDY HAGGAR, MICHAEL PAPPALARDO, | * |
| KATHERINE LAVIGNE, JOSEPH AIELLO, | * |
| RONALD VALLIERE, METHUEN POLICE | * |
| PATROLMEN'S ASSOCIATION, | * |
| JOHN DOE, | * |
| | * |
| Defendants. | * |

MEMORANDUM

October 11, 2011

TAURO, J.

I.   Introduction

This action stems from Plaintiff Larry Phillips's claim against the City of Methuen and a number of individual police officers employed by the City of Methuen regarding alleged violations of Plaintiff's state and federal constitutional rights. Presently at issue are the Supervisory Defendants'[1] Motion to Dismiss [#16], the Patrol Defendants'[2] Motion to Dismiss [#24] and Defendant City of Methuen's Motion to Dismiss [#20]. For the following reasons, the Defendants' Motions to Dismiss [#16, #24, #20] are ALLOWED as to Plaintiff's federal claims, and Plaintiff's state-law claims are DISMISSED WITHOUT PREJUDICE.

---

[1]The "Supervisory Defendants" are Defendants Solomon, Haggar, Pappalardo and Lavigne.  See [#16].

[2]The "Patrol Defendants" are Defendants Aiello, Valliere and Methuen Police Patrolmen's Association.  See [#24].

II. Background

   A. Factual Background[3]

Plaintiff is currently a Sergeant with the Methuen Police Department ("MPD"), and was a Sergeant with the Methuen Police Department at all times relevant to this case.[4] In 2006 Plaintiff was assigned to the Criminal Investigations Division of the Methuen Police Department.[5] In April of that year, he was instructed to investigate allegations of theft and receipt of stolen property by at least two individuals. He was also instructed not to investigate or criminally charge one individual, a Mr. Caron. Mr. Caron is a former relative of Joseph Solomon, Chief of the MPD.[6] Plaintiff initiated a criminal investigation and concluded that he had sufficient evidence to charge Mr. Caron.[7] On July 26, 2006 Plaintiff informed his supervisors of the results of his investigation, and was ordered not to charge Mr. Caron.[8]

Because he believed that Chief Solomon and others within the Methuen Police Department would interfere with his investigation, Plaintiff contacted Special Agent Michael

---

[3] Because the issues analyzed here arise in the context of a Motion to Dismiss, this court presents the facts as they are related in Plaintiff's complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[4] Compl. ¶ 5 [#1].

[5] Compl. ¶ 15 [#1].

[6] Compl. ¶ 17-19 [#1].

[7] Compl. ¶ 16-19 [#1].

[8] Compl. ¶ 20 [#1].

Dougherty of the FBI.[9] Plaintiff agreed to be a cooperating witness for the FBI in a criminal investigation of Chief Solomon and other employees of the City of Methuen.[10]

Before August 24, 2007, Defendant Solomon ordered his officers not to discuss among themselves any investigation directed against the Methuen Police Department.[11] Defendant Solomon also ordered Defendant Haggar and Lieutenant Michael Wnek to conduct an internal affairs investigation of multiple officers so as to identify individuals discussing any outside investigation.[12] In August 2007, Plaintiff was subpoenaed to testify before a federal grand jury, and immediately notified his superiors of the subpoena.[13] On August 24, 2007 Defendant Solomon "began screaming and became verbally abusive" toward Plaintiff while Plaintiff and some other officers were eating.[14] Earlier that day Defendant Solomon had found out that Mr. Caron had been subpoenaed to testify before the same grand jury as Plaintiff.[15]

On August 25, 2007, two Methuen Police lieutenants informed Plaintiff at his home that he had been suspended from the Methuen Police Department.[16] Plaintiff does not know the grounds for his suspension.[17] Plaintiff was ordered to undergo a psychological evaluation and

---

[9]Compl. ¶ 22 [#1].

[10]Compl. ¶ 22 [#1].

[11]Compl. ¶ 24 [#1].

[12]Compl. ¶ 25 [#1].

[13]Compl. ¶ 26 [#1].

[14]Compl. ¶ 27 [#1].

[15]Compl. ¶ 28 [#1].

[16]Compl. ¶ 29 [#1].

[17]Compl. ¶ 29 [#1].

receive a medical clearance before being allowed to return to work 30 days later.[18]

On August 28, 2007 Plaintiff testified before a federal grand jury.[19] Plaintiff alleges that after his testimony Defendant Solomon and employees under his supervision "initiated a campaign to discredit and intimidate [] Plaintiff."[20] On September 7, 2007 Plaintiff was informed that Lieutenant Michael Pappalardo of the Methuen Police Department had met with representatives of the Salem Police Department on multiple occasions with the intention to "dig up dirt" on Plaintiff.[21]

In the Fall of 2007, Defendant Solomon ordered Captain Lavigne to conduct an internal investigation against Plaintiff based on a "shoddy" allegation of harassment by a female dispatcher and two male patrolmen.[22] Chief Solomon used the results of the investigation to justify disciplinary action against Plaintiff. The disciplinary action has since been removed from Plaintiff's record following Solomon's discharge from his position.[23] Defendant Solomon also changed Plaintiff's computer passwords and disclosed Plaintiff's private health care information to Defendant Solomon's attorneys.[24]

Plaintiff also alleges a pattern of harassment by individuals within the MPD who are loyal

---

[18] Compl. ¶ 30 [#1].

[19] Compl. ¶ 31 [#1].

[20] Compl. ¶ 31 [#1].

[21] Compl. ¶ 32 [#1].

[22] Compl. ¶ 34 [#1].

[23] Compl. ¶ 35 [#1].

[24] Compl. ¶ 36-37 [#1].

4

to Defendant Solomon. Between September 1, 2007 and the present Defendant Aiello "filed multiple frivolous grievances against Plaintiff with the intent of harassing and intimidating him."[25] Aiello also conspired with Defendant Valliere to discredit Plaintiff. On August 19, 2008 Defendant Valliere alleged Plaintiff intentionally assaulted him during a training exercise.[26] Both Valliere and Aiello attempted to bring criminal charges against Plaintiff through union counsel. This attempt was rejected by the clerk magistrate of the Lawrence District Court.[27]

Between August 19, 2008 and the present, Defendant Haggar openly solicited letters and complaints from other Methuen officers against Plaintiff.[28] Defendant Haggar also encouraged other officers to fabricate allegations of misconduct against Plaintiff.[29]

Several members of the MPD continue to "attempt[] to discredit [] Plaintiff's reputation" via internet posts.[30] Between September 29 and November 6, 2009 ten entries about the Plaintiff were posted on the blog "Methuen Police Blotter."[31] The entries included accusations of alcoholism, sexual harassment, threatening co-workers, and spousal abuse.[32] No entries have been made since November 6, 2009.[33] The website is maintained by an unknown Methuen police officer

---

[25]Compl. ¶ 39 [#1].

[26]Compl. ¶ 40 [#1].

[27]Compl. ¶ 40 [#1].

[28]Compl. ¶ 41 [#1].

[29]Compl. ¶ 41 [#1].

[30]Compl. ¶ 42 [#1].

[31]Compl. ¶ 44 [#1].

[32]Compl. ¶44 [#1].

[33]Compl. ¶ 45 [#1].

5

(Defendant John Doe). Plaintiff has been informed that Defendant Solomon is the sole financier and sponsor of "Methuen Police Blotter."[34]

On December 9, 2009 Plaintiff notified the City of Methuen of his intent to pursue a civil rights claim.[35] One month after Plaintiff notified the City of his claim, Defendant Haggar removed Plaintiff from supervision of MPD's "ATV Unit."[36] On January 2, 2010 Plaintiff was reassigned to a post that is physically removed from the day to day operations of the MPD.[37] Plaintiff was forced to ask for a transfer and was assigned to a shift with two of the defendants named in the complaint.[38] Plaintiff has suffered stress, anxiety, excessively high blood pressure, lack of sleep, and marital strain.[39]

B.   Procedural Background

Plaintiff filed this case on January 31, 2011.[40] On March 7, 2011, Defendants Randy Haggar, Katherine Lavigne, Michael Pappalardo and Joseph Solomon ("Supervisory Defendants") filed a Motion to Dismiss [#16].[41] On March 16, 2011, the City of Methuen filed a Motion to Dismiss [#20].[42] On March 21, 2011, Defendants Joseph Aiello, Methuen Police Patrolmen's

---

[34] Compl. ¶ 43 [#1].

[35] Compl. ¶ 46 [#1].

[36] Compl. ¶ 47 [#1].

[37] Compl. ¶ 48 [#1].

[38] Compl. ¶ 49 [#1].

[39] Compl. ¶ 50 [#1].

[40] Compl. [#1].

[41] Motion to Dismiss [#16].

[42] Motion to Dismiss [#20].

Association , and Ronald Valliere ("Patrol Defendants") filed a Motion to Dismiss [#24].[43]

Plaintiff brings fourteen counts, including six federal claims under 42 U.S.C. §1983[44] and eight state law claims, including two under the Massachusetts Civil Rights Act[45] and four in tort.[46]

III.    Discussion

    A.    Standard of Review

The standard for evaluating a motion to dismiss for failure to state a claim is clear. While this court must accept all of Plaintiff's factual allegations as true, bare assertions and conclusions of law are not entitled to similar weight.[47] As this court has previously stated:

> In addressing a motion to dismiss, a court must accept all well-pleaded facts in a complaint as true. . . . Although a court draws all reasonable inferences in a plaintiff's favor, a court need not credit a complaint's "bald assertions" or "legal conclusions." Dismissal pursuant to Rule 12(b)(6) is appropriate if a complaint "fail[s] to state a claim upon which relief can be granted." To state a claim, a complaint must contain factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.[48]

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief."[49] There must be sufficient facts in the complaint to state a claim upon which relief can be granted as

---

[43]Motion to Dismiss [#24].

[44]Compl. ¶ 51-72 [#1].

[45]Compl. ¶ 73-76 [#1].

[46]Compl. ¶ 77-94 [#1].

[47]Special Situations Fund III, L.P. v. Am. Dental Partners, Inc., 775 F. Supp. 2d 227, 237 (D. Mass, 2011).

[48]Id. at 237.

[49] Rodrigues-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).

to each defendant named in the complaint.[50]

      B.    <u>The Motions to Dismiss Plaintiff's Federal Claims</u>

          1.    <u>Counts I and II of the Complaint are Time Barred:</u>

In Count I of the Complaint, Plaintiff alleges a violation of his federal constitutional due process rights.[51] Plaintiff claims that he was suspended from his position with the Methuen Police Department for a period of one month without notice or a right to a hearing.[52] In Count II, Plaintiff alleges that this deprivation was the result of a conspiracy among the several defendants, including the City of Methuen.[53] Both counts are brought under 42 U.S.C. §1983.[54] Even taking all facts alleged in Plaintiff's complaint as true, the Plaintiff fails to state a claim for which relief can be granted and, therefore, these counts must be dismissed as against all defendants.[55]

There is no federal statute of limitations for claims brought under 42. U.S.C. §1983. Instead, §1983 claims borrow the statute of limitations for personal injury in the state where the Federal District Court is located.[56] In Massachusetts, personal injury actions must be brought

---

[50] <u>Ocasio-Hernandez v. Fortuno-Burset</u>, ____ F.3d ___, 2011 WL 1228768, *13 (1st Cir. April 1, 2011).

[51] Compl. ¶ 51-53 [#1].

[52] Compl. ¶ 52 [#1].

[53] Compl. ¶ 54-56 [#1].

[54] Compl. ¶ 51-56 [#1].

[55] Fed. R. Civ. P. 12(b)(6), see discussion of standard of review in Part A.

[56] <u>Rodriguez-Garcia v. Municipality of Caguas</u>, 354 F.3d 91, 96-97 (1st Cir. 2004). <u>See</u> <u>Owens v. Okure</u>, 488 U.S. 235, 249-50 (1989).

within three years of accrual.⁵⁷  Federal law determines the date of accrual, and the limitations period begins to run when the plaintiff, "knows or has reason to know of the injury which is the basis for his claim."⁵⁸

The continuing violation doctrine is an equitable exception to the statute of limitations. It allows employees who have suffered discrimination to seek damages where an otherwise time-barred act is part of an ongoing pattern of discriminatory acts, some of which occurred during the limitations period.⁵⁹  This exception is designed to ensure that "these plaintiffs' claims are not foreclosed merely because the plaintiffs need to see a pattern of repeated acts before they realized that the individual acts were discriminatory."⁶⁰

There are two types of cases that fit within the continuing violation: serial and systemic.⁶¹ A serial violation occurs when Plaintiff suffers, "a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate [actionable] wrong."⁶²  A systemic violation, by contrast, "need not involve an identifiable discrete act of discrimination transpiring within the limitation period," but rather must show that Plaintiff has been harmed by

---

⁵⁷Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). See also MASS. GEN LAWS ch. 260, § 2A (2006).

⁵⁸Rodriguez-Garcia, 354 F.3d at 96-97.

⁵⁹O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001).

⁶⁰Id. at 730.

⁶¹Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994).

⁶²Id. at 610 (quoting Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)). See also Thornton v. United Parcel Service, Inc., 587 F.3d 27, 33 (1st Cir. 2009).

9

the application of a discriminatory policy or practice.[63]

In examining a continuing violation claim that alleges serial violations, if one of the discriminatory acts standing alone is of "sufficient permanence" that it should trigger an "awareness of the need to assert one's rights," then the serial violation exception does not apply.[64] The continuing violation doctrine does not apply to discrete acts of discrimination that occur on a particular day, only to "conduct that takes place 'over a series of days or perhaps years.'"[65]

In this case, it is clear both that the statute of limitations has run, and that the continuing violation doctrine does not apply. The underlying violation of Plaintiff's rights is his suspension from the Methuen Police Department without notice or a right to a hearing.[66] This action took place on August 25, 2007,[67] and Plaintiff did not file the complaint in this matter until January 31, 2011.[68] This places the original violation outside the three-year statute of limitations.

The continuing violation doctrine is unavailable to Plaintiff because the nature of the violation he suffered should have put him on notice as to the existence of a legal claim.[69] Under

---

[63]Id. at 610 (quoting Jensen, 912 F.2d at 523).

[64]O'Rourke, 235 F.3d at 731.

[65]Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)).

[66]Compl. ¶ 51-53 [#1].

[67]Compl. ¶ 29 [#1].

[68]See Compl. [#1].

[69]Although Plaintiff does not make clear whether he is advancing a serial or systemic violation theory, see Plaintiff's Opposition to Supervisory Defendants' Motion to Dismiss [#23] at 3-5, it appears from the cases cited in Plaintiff's Opposition [#23], that Plaintiff is alleging a serial violation, particularly because Plaintiff does not allege that his injuries were the result of a discriminatory policy, see id.

the standard articulated in O'Rourke v. City of Providence,[70] Plaintiff's suspension from the police department was a discrete act of "sufficient permanence," which should have prompted him to assert his legal rights. Suspension from active duty is the type of injury that is immediately recognizable as such, and that should give rise to a request for a remedy.

Cases where the equitable exception have been applied have focused on situations where a course of discriminatory conduct took place over an extended period of time, without any single incident rising to the level of a recognizable injury.[71] A plaintiff cannot fail to file suit after a cause of action accrues simply because his rights continue to be violated.[72] Plaintiff's injury accrued in August of 2007, and stands alone as a distinct violation of Plaintiff's rights. The exception is, therefore, inapplicable here. Plaintiff's claim as to Count I must be dismissed as time barred.

Plaintiff's conspiracy claim in Count II rests on the alleged violation of his rights in Count I.[73] It is well established that, "in the context of a continuing conspiracy to violate civil rights, the

---

[70]O'Rourke, 235 F.3d at 731("This court has identified several criteria in determining the sufficiency of a serial continuing violation claim, which we summarize here: (1) is the *subject matter* of the discriminatory acts sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts? (2) are the acts isolated and discrete or do they occur with *frequency* or repetitively or continuously? (3) are the acts of *sufficient permanence* that they should trigger an awareness of the need to assert one's rights?") (internal quotation marks omitted). See also Sabree v. United Broth. of Carpenters and Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir. 1990) (recognizing that the third factor, permanence, is the most important).

[71]See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002); Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 188 (1st Cir. 2003); Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003).

[72]Perez-Sanchez v. Public Building Authority, 531 F.3d 104, 107 (1st Cir. 2008).

[73]See Compl. ¶ 54-56 [#1].

11

statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of the injury)."[74] Because Plaintiff's suspension was a distinct violation of his rights, his cause of action under §1983 and the attendant conspiracy claim accrued in August of 2007. Both claims are time-barred, and Counts I and II of Plaintiff's complaint must be dismissed.

        2.        <u>Counts III and IV Fail to State a Claim for Which Relief Can be Granted:</u>

In Count III, Plaintiff alleges a violation of his federal constitutional due process rights. Plaintiff alleges that Defendants violated his rights by removing him from his position as supervisor of the Methuen Police Department's "ATV Unit."[75] In Count IV, Plaintiff alleges that the injury alleged in Count III was the result of a conspiracy among the several Defendants.[76] The Town of Methuen is only named as a defendant in Count IV.[77]

In order to assert a constitutional due process violation under 42 U.S.C. §1983, Plaintiff must plead the existence of a property interest in the benefit at issue grounded in an independent source, such as state law.[78] This court has previously held that, "a change in duties, without an

---

[74] <u>Nieves v. McSweeney</u>, 241 F.3d 46, 51 (1st Cir. 2001) (citing <u>Hernandez Jiminez v. Calero Toledo</u>, 576 F.2d 402, 404 (1st Cir. 1978)).

[75] Compl. ¶ 57-59 [#1].

[76] Compl. ¶ 60-62 [#1].

[77] Compl. ¶ 60-62 [#1].

[78] <u>Town of Castle Rock, Colo. v. Gonzales</u>, 545 U.S. 748, 756 (2005) ("The procedural component of the Due Process Clause does not protect everything that might be described as a benefit: To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate entitlement to it. . . . Such entitlements are, of course, . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.") (quoting <u>Board of Regents of State</u>

accompanying change in salary, does not constitute a property interest. . . . [S]upervisory duties, conferred on a discretionary basis, do not qualify as a property interest."[79] Furthermore, in the event that a plaintiff has a right to a "benefit" conferred by state law, he cannot succeed in alleging a due process violation under §1983 unless "he can show that the state failed to provide him with an adequate postdeprivation remedy."[80] In sum, in order to successfully allege a violation of due process under §1983, a plaintiff must show both that he has an entitlement to a benefit grounded in an independent source, such as state law, and that the state has failed to provide an adequate postdeprivation remedy.

In this case, Plaintiff's claims in Counts III and IV fail for two reasons. First, the claims fail because Plaintiff does not possess an entitlement to his position as supervisor of the "ATV Unit." Second, even if Plaintiff did possess an entitlement to that position, he has failed to show that the Commonwealth's postdeprivation remedy is inadequate, because he has not exhausted the remedies available under the Massachusetts civil service laws. Plaintiff alleges that, after the Methuen Police Department received written notice that Plaintiff intended to pursue a civil rights claim, Plaintiff was removed from his position as supervisor of the "ATV Unit," and was

---

Colleges v. Roth, 408 U.S. 564, 577 (1972); Paul v. Davis, 424 U.S. 693, 709 (1976)) (internal quotation marks omitted).

[79]Pedicini v. U.S., 480 F.Supp. 2d 438, 461 (D. Mass, 2007) (citing Fields v. Durham, 909 F.2d 94, 98 (4th Cir. 1990); Huang v. Bd. of Governors, 902 F.2d 1134, 1141-42 (4th Cir. 1990); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003)).

[80]Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996) (citing Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992) ("[I]f a state provides adequate postdeprivation remedies – either by statute or through the common-law tort remedies available in its courts – no claim of a violation of procedural due process can be brought under §1983 against the state officials whose random and unauthorized conduct caused the deprivation.")).

13

reassigned to a post that was removed from the day-to-day operations of the police department.[81] Plaintiff does not allege that he suffered a reduction in rank or pay. In fact, Plaintiff has maintained the rank of Sergeant with the Methuen Police Department at all times relevant to this cause of action.[82]

Plaintiff's removal from his role as supervisor of the "ATV Unit" is just the sort of "change in duties, without an accompanying change in salary," that this court found did not rise to the level of a protected property interest in Pedicini v. U.S..[83] Because Plaintiff has not sufficiently alleged an entitlement to his position, his claim for a due process violation under §1983 cannot be sustained.

In a responsive pleading, Plaintiff claimed that he has an entitlement to his position under Massachusetts's civil service law.[84] But, the Parties dispute whether Massachusetts law does, in fact, give Plaintiff an entitlement to his position as supervisor of the ATV Unit.[85] Even if Plaintiff's position is protected under Massachusetts's civil service law, his due process claim still fails because Plaintiff has not exhausted the administrative remedies provided by that statute.[86]

---

[81] Compl. ¶ 46-48 [#1].

[82] See Compl. ¶ 46-48 [#1].

[83] See Pedicini, 480 F. Supp. 2d at 461.

[84] Pl. Opp. to Supervisory Defendants' Mot. Dismiss [#23] at 9.

[85] In its Memorandum in of Support of its Motion to Dismiss [#21] at 6, Defendant City of Methuen argues that "Any and all assignments [to any supervisory role in any unit in the Methuen Police Department] are left to the sole discretion of the chief of police. The so-called 'ATV Unit,' is not a standing police unit but one called on an intermittent, 'as needed' basis. Assignments to the same, including supervisors, are temporary and, again, left to the sole discretion of the chief of police."

[86] See M.G.L. c. 31 §41.

The Massachusetts Civil Service Statute provides for a right to a hearing prior to removal from a covered position, and a right to appeal the outcome of a hearing.[87] Any person who believes that the appointing authority has failed to provide the procedures required by the civil service law may file a complaint with the civil service commission and request a hearing on the issue of whether there was just cause for the removal.[88] Plaintiff has not alleged that he has filed a complaint with the civil service commission or requested a hearing, and does not allege anywhere in the complaint that the remedies provided by the Commonwealth of Massachusetts are inadequate.[89] Because Plaintiff has failed to show that the State did not provide him with an adequate postdeprivation remedy, he does not state a claim upon which relief can be granted.[90]

Count IV must be dismissed because Plaintiff does not allege sufficient underlying facts to support a claim for relief. In Bell Atlantic Corp. v. Twombly, the Supreme Court held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[91] While the plaintiff is entitled to a presumption that all factual assertions contained in the complaint are true, this does not apply to conclusions of law.[92] In order to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is

---

[87] M.G.L. c. 31 §41.

[88] M.G.L. c. 31 §42.

[89] See Compl. [#1].

[90] See Cronin, 81 F.3d at 260.

[91] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[92] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).

15

plausible on its face."[93] To meet the plausibility standard, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[94] Furthermore, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"[95]

Here, the Complaint merely asserts a legal conclusion that Defendants conspired to violate Plaintiff's due process rights.[96] The Complaint contains no facts to support Plaintiff's allegation of conspiracy. In fact, the complaint only alleges that one defendant (Captain Haggar) was responsible for Plaintiff's removal as supervisor of the "ATV Unit."[97] Because Count IV is derivative of Count III, and because Plaintiff fails to allege sufficient facts to support the existence of a conspiracy, the Complaint does not meet the pleading requirements under the Federal Rules of Civil Procedure[98] and cannot survive Defendants' Motions to Dismiss.

        3.    <u>Count V Fails to Allege an Underlying Constitutional Violation:</u>

In Count V, Plaintiff alleges that Defendants are liable under §1983 by virtue of their positions as supervisors within the Methuen Police Department.[99]

The standard for supervisory liability under 42 U.S.C. §1983 is clear: "[A] supervisory

---

[93]Id. (quoting <u>Twombly</u>, 550 U.S. at 570).

[94]Id. (citing <u>Twombly</u>, 550 U.S. at 556).

[95]Id. (quoting <u>Twombly</u>, 550 U.S. at 557).

[96]Compl. ¶ 60-62 [#1].

[97]Compl. ¶ 47 [#1].

[98]Fed. R. Civ. P. 8(a)(2).

[99]Compl. ¶ 64 [#1].

16

official may be held liable for the behavior of his subordinates only if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference."[100]

In this case, Plaintiff fails to allege sufficient facts in the Complaint to support finding a constitutional violation by any of the Defendants.[101] Plaintiff's claim for supervisory liability therefore must fail under the first prong of the test laid out in Pineda v. Toomey.[102] Because Plaintiff has not set forth sufficient facts to state a claim for an underlying constitutional violation, his derivative supervisory liability claim is not plausible under the standard set forth in Ashcroft v. Iqubal,[103] and cannot survive a motion to dismiss.

    4. Count VI Fails Because Plaintiff Does Not Meet Standard for Monell Liability:

In Count VI, Plaintiff seeks to hold the City of Methuen liable for the conduct of the individual police officer defendants under §1983.[104] In Monell v. Department of Social Services of City of New York, the Supreme Court held that municipalities and other local government

---

[100]Pineda v. Toomey 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988) (internal citations, quotation marks, and brackets omitted)).

[101]See sections A1-A2.

[102]Pineda, 533 F.3d at 54.

[103]Iqbal, 129 S.Ct. at 1949

[104]Compl.¶ 68-72 [#1].

17

units can be sued under 42 U.S.C. §1983.[105] Municipalities can only be held liable under §1983, however, if the constitutional tort was caused by action pursuant to an official municipal policy of some sort.[106] "In particular . . . a municipality cannot be held liable under §1983 on a *respondeat superior* theory."[107]

A plaintiff must make a two-part showing in order to support a claim for municipal liability under §1983. He must demonstrate, "both the existence of a policy or custom and a causal link between that policy and the constitutional harm."[108] As the Supreme Court stated in Pembaur v. City of Cincinnati, "[t]he 'official policy' requirement [in Monell] was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[109]

Because this court is addressing this issue in the context of a motion to dismiss, it applies the standard for such motions as set out above. In particular, while Plaintiff's assertions of fact must be taken as true, Plaintiff's conclusions of law are not entitled to similar weight.[110]

In the present matter, Plaintiff's complaint is completely devoid of any allegations of fact linking the conduct of the named defendants to any official policy or custom of the City of

---

[105] Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 690 (1978).

[106] Id. at 691.

[107] Id.

[108] Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (citing City of Canton, Ohio v. Harris, 489 U.S. 373, 385 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).

[109] Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis omitted).

[110] See discussion in Part A2.

18

Methuen.[111] In fact, the complaint seems to seek to attribute the conduct of the police officers to the City as a form of vicarious liability, which is clearly unavailable under the standard set out in Monell.[112] Plaintiff's allegations against the City are limited to one paragraph, in which Plaintiff makes the bald legal conclusion that the City of Methuen, "authorized, approved, knowingly acquiesced or participated directly in its individual officers' misconduct as its official policy or practice."[113] Because the Complaint fails to allege any facts to support Plaintiff's claim that the other defendants' conduct was in accordance with an official policy, it fails to state a claim upon which relief can be granted.

C.  The Court Declines to Exercise Jurisdiction Over Pendent State Law Claims:

In addition to the six Federal claims, Plaintiff brings eight claims under the laws of the Commonwealth of Massachusetts. These claims are DISMISSED WITHOUT PREJUDICE for the reasons stated below.

The First Circuit has recognized that federal district courts have broad discretion in deciding whether to exercise jurisdiction over pendent state-law claims in non-diversity cases.[114] Where all federal claims are dismissed before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will

---

[111] See Compl. [#1].

[112] At Paragraph 69, the Complaint states, "The conduct of the Methuen Police Officers, as described above, demonstrates that the City of Methuen engaged in a pattern of discrimination and unconstitutional conduct in violation of 42 U.S.C. section 1983."

[113] Compl. ¶ 70 [#1].

[114] Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991).

19

point toward declining to exercise jurisdiction over the remaining state-law claims."[115]

In this case, all of Plaintiff's federal claims have been dismissed, and only state law claims remain. In accordance with the principles laid out in Newman[116] and Cohill,[117] this court, in its discretion, declines jurisdiction over Plaintiff's pendent state-law claims.

IV.    Conclusion

For the foregoing reasons, the Supervisory Defendants' Motion to Dismiss [#16], the Patrol Defendants' Motion to Dismiss [#24] and Defendant City of Methuen's Motion to Dismiss [#20] are ALLOWED as to Counts I-VI of Plaintiff's Complaint. Plaintiff's state law claims, Counts VI - XIV in the Complaint are DISMISSED WITHOUT PREJUDICE.

AN ORDER HAS BEEN ISSUED.

       /s/ Joseph L. Tauro  
    United States District Judge

---

[115] Newman, 930 F.2d at 964, (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice)).

[116] Id. at 963.

[117] Cohill, 484 U.S. at 350.